UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARMANDO MARTIN LOPEZ ESTRADA,<br><br>Defendant. | Case No.: 17cr2726-LAB and 19cv1291-LAB<br><br>**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255** |

Defendant Armando Martin Lopez Estrada pled guilty, pursuant to a plea agreement, to conspiracy to distribute methamphetamine and cocaine, and conspiracy to import methamphetamine and cocaine. He has now filed a motion under 28 U.S.C. § 2255 asserting, among other things, that his attorney did not explain the plea agreement's waiver of collateral attack to him. His other claims depend in large part on the voluntariness of his plea agreement and the effectiveness of his waiver.

**Legal Standards and Procedural History**

To be entitled to a hearing, petitioner must allege specific facts which, if true, would entitle him to relief. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996). Under § 2255(b), if the records and files and the motion itself conclusively

show that the prisoner is not entitled to relief, no hearing is required.

Lopez pled guilty at a change of plea hearing on January 15, 2018 before Magistrate Judge William Gallo, along with two co-Defendants. The government has now filed transcripts of that hearing (Docket no. 149-1 (Change of Plea Tr.)), and of the sentencing (Docket no. 149-2). These transcripts form a key part of the record. *See Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir. 2012) (holding that a defendant cannot base a collateral attack on allegations that, without explanation, directly contradict the defendant's sworn statements during a plea colloquy).

**Claim One, Alleging That Counsel Failed to Explain the Waiver Provision**

Lopez's plea agreement (Docket no. 82) waived appeal and collateral attack, except for collateral attacks based on ineffective assistance of counsel. (*Id.* at 15.) The waiver was not effective, however, if Lopez was sentenced above the high end of the guideline range recommended by the government. (*Id.*) But because his sentence was lower than the low end of range in the government's sentencing summary chart—and lower even than the low end of the range recommended by Lopez's counsel—this exception was not triggered. (*See* Docket nos. 112 at 1 (government's recommended guideline range); 130 at 2 (Lopez's recommended guideline range); and 140 (judgment).)

Lopez's first claim is that his counsel did not explain to him what it meant to waive collateral attack, and he suggests that his waiver was therefore not knowing and voluntary. He describes this as an ineffective assistance of counsel claim, but it also implicates the voluntariness of his plea agreement. (*See* Docket no. 144 ("Mot.") at 4.) This in turn implicates the effectiveness of his waiver of other claims. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (expressing doubt that a waiver could bar claims relating to the validity of the waiver itself).

While under oath at the hearing, Lopez confirmed that he had signed and initialed the plea agreement. (Change of Plea Tr. at 9:13–25.) He testified that he had either carefully read it or had it translated and read to him so that he would

understand it. (*Id.* at 10:5–11.)[1]  He testified that he had had sufficient time to discuss the case and the plea agreement with his attorney, and that all of his questions had been answered. (*Id*. at 10:12–18.)  He testified that he understood all of the terms and conditions in his plea agreement. (*Id.* at 10:19–24.) And he testified that he was satisfied with his attorney's advice. (*Id.* at 10:28–11:5.) Judge Gallo specifically inquired of Lopez whether he had discussed the waiver of appeal and collateral attack with his counsel, and Lopez testified that they had discussed it. (*Id*. at 21:11–15 and 19–21.) Lopez's attorney also represented to the Court that she believed Lopez understood all of the terms and conditions Lopez had agreed to. (*Id*. at 11:10–14.)

Lopez's allegation that his counsel never explained the waiver provision to him directly contradicts his own sworn testimony at the change of plea hearing. Furthermore, the transcript shows that Judge Gallo specifically inquired about his understanding of the waiver. And his attorney, based on her discussion of the plea agreement with him, believed he fully understood it. Lopez's claim that his waiver of appeal and collateral attack was not knowing and intelligent is palpably incredible, and can be rejected without a hearing.  The Court therefore holds that his attorney was not ineffective for failing to explain to him the terms of his plea agreement, including the waiver of collateral attack. Furthermore, his waiver is binding, except as to claims of ineffective assistance of counsel.  *See United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).

/ / /

/ / /

---

[1] In response to this and the following questions, the transcript does not distinguish among the three Defendants. But because all three answered identically to the same questions at the same time, it is clear what Lopez's answer was.

**Claim Two, Alleging That Counsel Should Have Challenged Drug Quantities**

The indictment charged Lopez with conspiracy to import and distribute "50 grams and more" of methamphetamine (actual), and "5 kilograms and more" of cocaine. (Docket no. 1 (Indictment), Counts 1 and 2.) The plea agreement mentioned these amounts (Docket no. 82 at 2:4–21), but noted that the amount of methamphetamine mixture was "forty-five (45) kilograms." (*Id.* at 5:3–26.)[2] At the hearing before Judge Gallo, Lopez testified that he had read that section of the plea agreement and discussed it with his lawyer, and that it truthfully and accurately described what he did. (Change of Plea Tr. at 19:23–20:11.) The government's sentencing summary chart (Docket no. 112 at 1) and the pre-sentence report (Docket no. 97 at 2) use these same drug quantities.

Lopez's Motion faults his attorney for failing to establish drug quantity amounts during the hearing before Judge Gallo, and for failing to object to the drug quantity calculations.[3] As a result, he contends, his sentence was too high. But Lopez himself testified that the amounts in the plea agreement were accurate, and his lawyer cannot be faulted for accepting his testimony as true. And once Lopez testified that he did in fact conspire to import and distribute 45 kilograms of methamphetamine mixture and 5 kilograms of cocaine, his lawyer was not ineffective for doubting him or seeking more information.

Lopez also argues that his sentence was outside the applicable sentencing guidelines and therefore was unreasonable. But as discussed, his sentence was lower than the guideline range.

---

[2] The plea agreement does not specify that 45 kilograms of methamphetamine was a mixture, but its omission of the word "actual" implies it, and this is consistent with the parties' sentencing summary charts. The government's chart specifies that 45 kilograms of methamphetamine was a mixture. (Docket no. 112 at 1.)

[3] He apparently means his lawyer should have objected at sentencing. A change of plea hearing would not be the time to raise such an objection.

**Claim Three, Safety Valve**

Lopez argues either that he should have been given the benefit of safety valve at sentencing, or that he is now eligible for it because of the First Step Act of 2018. But because he had prior 3-point and 2-point offenses (*see* Docket no. 97 at 13–14) and in addition was an organizer, leader, or supervisor (Sentencing Tr. at 23:4–6; 241–9) he was ineligible. *See United States v. Lopez*, 2019 WL 3974124, slip op. at *1–*2 (S.D. Cal., Aug. 21, 2019) (discussing safety valve under First Step Act). In addition, he did not raise this claim on direct appeal and has not shown cause or prejudice for the default. *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).

**Lopez's Concession and Abandonment of Claims**

After the government filed its response, Lopez filed a reply (Docket no. 150) conceding that the government's arguments were correct, and abandoning his claims. (*Id.* at 1.) He instead asked that the government recommend his immediate deportation to Mexico. As Lopez's reply concedes, any such recommendation is within the Attorney General's discretion. Although Lopez asks the Court to order the government to respond to his requests for immediate deportation in lieu of further imprisonment, the Court has no authority to do so. *See Mendoza v. I.N.S.*, 2010 WL 5136018, at *2 (N.D. Cal., Dec. 9, 2010) (citing 8 U.S.C. § 1231(a)(4)(A)–(B)). Nor does the Court have the authority to change Lopez's sentence now based on the factors he raises for the first time in his reply brief.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**Conclusion and Order**

Because the record conclusively shows that Lopez is entitled to no relief, no hearing is required. The petition is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 3, 2020

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge